IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LANCE W. ANDERSON,<br><br>                Plaintiff,<br><br>v.<br><br>PATRICK R. DONAHOE, Postmaster<br>General, United States Postal Service,<br><br>                Defendant. | ORDER AND MEMORANDUM DECISION<br>GRANTING DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>Case No. 2:11-CV-0520 BCW<br><br><br>Magistrate Judge Brooke Wells |

Before the Court is Defendant Patrick Donahoe's Motion for Summary Judgment.[1]  At

oral argument on Defendant's motion Plaintiff was represented by David Holdsworth and

Defendant was represented by Daniel Price.  Following argument, both parties submitted

proposed findings of fact and conclusions of law.  After consideration of the parties' memoranda,

proposed findings, and relevant law, the Court concludes summary judgment is appropriate and

as outlined below, the Court grants Defendant's motion.

BACKGROUND[2]

Mr. Anderson has worked for the post office for approximately 30 years and holds the

position of distribution window clerk at the Vernal, Utah post office.[3]  Typically, the work of a

window clerk involves working on the "window," i.e. interacting directly with customers for a

certain portion of the day, and also performing other miscellaneous duties as needed during the

day.

---

[1] Docket no. 18.

[2] The background facts are taken from the briefs submitted by the parties and the Complaint filed by Plaintiff.

[3] Mr. Anderson's duties as window clerk have been modified as of the date of the Court's decision.  For
convenience, however, the Court refers to Mr. Anderson's previous job and the modified position by the same title.

On February 2, 2009, Mr. Anderson submitted medical documentation to his supervisors indicating that due to his anxiety and hypertension, he was restricted from working no more than three hours a day on the window, where he was responsible for dealing with customers.[4]  In March 2009, Mr. Anderson's doctor indicated this restriction was permanent.  Prior to February 2009, the record indicates that Mr. Anderson's typical day would consist of working on the window for approximately six hours out of an eight hour shift.  The other remaining time during his shift was spent casing mail in the box section.

After Mr. Anderson submitted the medical documentation in February 2009, he completed a light duty request asking the Postal Service to find him work within his restrictions. This light duty request provided that Mr. Anderson would not work the window for more than three hours a day and that he wouldn't have any overtime.  Right above Mr. Anderson's signature on the light duty request form it states the following:

> I understand that the work week of a light duty employee is based on the needs of the Postal Service and may depart from the normal work week as defined in the hours of work portion of the collective bargaining agreement.  Further, I understand and accept that I may be scheduled for less than eight hours of a work a day and less than forty hours per week.[5]

Following this request Mr. Anderson was placed on light duty and did not work more than three hours a day at the window.  Initially the post office was able to find enough work for Mr. Anderson to complete an entire eight hour day.  In June 2009, however, Mr. Anderson was asked to take partial day leave.  This occurred 23 times between June 26, 2009 and October 9, 2009.  Mr. Anderson used 41.14 hours of sick leave to account for the partial day leave during these months.  In October business became busier presumably because of the Christmas season and Mr. Anderson once again worked eight hour days.

---

[4] Complaint ¶ 20, docket no. 2.

[5] Def.'s Mem. in Supp. Ex. A (emphasis added), docket no. 19.

On July 27, 2009, approximately one month after Mr. Anderson was first sent home early

and had to use partial day sick leave, Plaintiff filed a notice of "occupational disease and claim

for compensation" (FECA claim).  In the FECA claim Mr. Anderson asserted that he became ill

from his work and his anxiety was caused or aggravated by his employment.  On March 4, 2010,

Plaintiff was notified that the Department of Labor's Office of Workers Compensation Programs

(OWCP) had accepted his FECA claim for "generalized anxiety disorder."  Pursuant to this

claim, Mr. Anderson was notified that he could receive payment or reimbursement for medical

expenses and prescriptions, and perhaps most significantly, that he was entitled to reimbursement

of the 41.14 hours of medical leave he used on those days when he was sent home early.  To

date, there is no record before the Court indicating that Mr. Anderson has submitted the proper

paperwork to receive reimbursement for the 41.14 hours of medical leave he used in 2009.[6]

Following the OWCP's decision, the postal service offered Mr. Anderson a temporary

modified duty assignment that became a permanent Rehabilitation Modified position in July

2010.  Mr. Anderson still works for the post office and his new position pays approximately the

same or a little more than his prior position.

## LEGAL STANDARDS

**i)      Disparate Treatment**

The Rehabilitation Act, which adops the American with Disabilities Act (ADA)

standards, protects "a qualified individual with a disability" from "disparate treatment,"

including "not making reasonable accommodations to the known physical or mental limitations

of an otherwise qualified individual."[7]  To establish a prima facie case of disparate treatment,

---

[6] The Court is left to wonder whether there would even be a controversy in this case if Plaintiff had filed the proper paperwork and received compensation for the partial day medical leave he was forced to use.

[7] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188-89 (10th Cir. 2003) (quoting 42 U.S.C. § 12112(a)(b)(5)(A)).

Plaintiff must show that: (1) he is a member of the statutorily protected class ("a qualified

individual with a disability"); (2) he was subject to an adverse employment action; and (3)

similarly situated employees outside his protected class were treated more favorably in like

circumstances.

### ii)      Failure to Accommodate

A prima facie case of failure to accommodate under the Rehabilitation Act of 1973

adopts the standards of the ADA.  A prima facie case requires the employee to show that 1) he is

disabled within the meaning of the Act; 2) he is a qualified individual (capable of doing the job

with or without accommodation); 3) the defendant was aware of the disability; and 4) the

defendant failed to provide necessary accommodation.  The term "qualified individual" means an

individual who, with or without reasonable accommodation, can perform the essential functions

of the position.  Each of these elements is critical to Plaintiff's claim.  If Mr. Anderson cannot

satisfy the "qualified individual" prong, the court need not address remaining elements.

### iii)     Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."[8]  The party seeking summary judgment bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, and answers to interrogatories that support summary judgment.  To defeat a motion

for summary judgment, a plaintiff "must do more than simply show that there is some

---

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

metaphysical doubt as to the material facts."[9]   Rather, a plaintiff must come forward with some

evidence establishing his claim.  "The mere existence of a scintilla of evidence in support of the

nonmovant's position, however, is insufficient to create a dispute of fact that is 'genuine.'  An

issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury

could find in favor of the nonmovant."[10]   Once the movant shows the absence of a genuine issue

of material fact, the nonmovant cannot rest upon his or her pleadings, "but must set forth specific

facts showing that there is a genuine issue for trial."[11]   Thus, to defeat defendant's motion,

plaintiff has the burden of showing specific facts that could persuade a reasonable fact-finder to

rule in her favor.

## ANALYSIS

Plaintiff asserts two claims for employment discrimination based on an anxiety disorder:

first, disparate treatment, and second, a failure to accommodate.  Each of these claims is

dependent upon whether Plaintiff is qualified to perform the duties of his job.

Defendant asserts that working the window about six hours is an essential part of the job.

In addition, a window clerk has an "open till" during the shift and must be available to work the

window anytime during the eight hour shift.  In support of these assertions Defendant offers the

affidavit of Gary Bolton who is the Postmaster at the Vernal post office.  Mr. Bolton states that

the "primary purpose of Mr. Anderson's position was to provide customer service . . . at the

window, the hours reflecting the hours the Post Office window is open."[12]   According to Mr.

Bolton, Plaintiff also did a "small amount of mail distribution that involved delivering mail to the

---

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[10] *Planned Parenthood of Rocky Mountains Services, Corp. v. Owens*, 287 F.3d 910, 916 (10th Cir. 2002) (citation and quotation omitted).

[11] *Cudjoe v. Independent School Dist*. No. 12, 297 F.3d 1058, 1062 (10th Cir. 2002) (citation and quotation omitted).

[12] Bolton Decl. ¶ 4, docket no. 19.

P.O. Box section at the Post Office" and was a closing clerk, i.e. the window clerk responsible

for working the window until closing time.[13]  Finally, Mr. Bolton states that generally, Mr.

Anderson would be at the window for six hours a day and that working the window "most of an

eight hour shift, or about six hours, was essential to performance of his job."[14]

 This case turns on the question of what are the essential functions of the window clerk

position.  The Tenth Circuit has stated that ordinarily this is a fact question to be decided on a

case-by-case basis,[15] which may preclude summary judgment.  But, if Mr. Anderson fails to

present evidence to rebut Defendant's assertion regarding the essential elements of the job then

Defendant will prevail.[16]

 Mr. Anderson does not dispute that working the window is an essential function of his

job.  Rather, Mr. Anderson argues that working the window for a particular length of time, such

as six hours, or during a particular time during a shift, is not an essential function of his job.

Plaintiff asserts that his evidence creates a genuine issue of material fact as to whether working

the window for more than three hours a day is an essential function of the job of distribution

window clerk.  In support of his position Mr. Anderson points to his history on the job.  To wit,

that he did not work the window for eight hours a shift.  Further, Plaintiff points to the fact that

the Postal Service found approximately five hours of other work for him to do while he was on

light duty.  Mr. Anderson also notes that the Postal Service offered him a modified position after

his successful FECA claim, which according to Plaintiff, is not that substantially different than

his former position.  The Court is not persuaded by Plaintiff's arguments.

---

[13] *Id.*

[14] *Id.*

[15] *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995).

[16] *See id.*

Here, the Court finds that working only three hours out of an eight hour shift on the window (or 37.5% of a shift) significantly alters the window clerk position. Defendant submitted an affidavit from the Vernal Postmaster that states 6 hours of window time (or 75% of a shift) is the essential function standard. Plaintiff's own work history supports this premise because that is what he worked before getting a light duty assignment and eventually a rehabilitated position requiring only three hours of window time. In essence, Plaintiff must be able to come forward with evidence that could persuade a reasonable jury that a window clerk, who is unable to work at the window for more than three hours of an eight hour shift, remains a "qualified individual" for the window clerk job. The evidence in the record and Plaintiff's allegations do not support this proposition. There is nothing in the record to refute Defendant's assertion that working the window 6 hours is an essential function of the window clerk position. The Rehabilitation Act does not require the employer to modify the essential functions of a job or create a permanent light duty position to accommodate an employee.

In addition, a plaintiff cannot use an employer's good faith efforts in attempting to accommodate them as evidence in support of their argument that certain duties were nonessential because they were modified by an employer. This doctrine was explicitly set forth in *Robert v. Bd. of County Commissioners of Brown County, Kansas*.[17] In *Robert*, the plaintiff worked as a supervisor of released adult offenders for ten years when she developed some medical conditions that prevented her from making home site visits. For a time the county overlooked the plaintiff's inability to do home visits. Eventually, however, after a few surgeries and exhausting all her

---

[17] 691 F.3d 1211 (10th Cir. 2012).

leave, the county released the plaintiff because "she was unable to return to work at full capacity after her leave ended."[18]

Plaintiff then filed suit against the county and other defendants.  She alleged that her termination constituted an unlawful retaliation for use of FMLA leave, discrimination under the ADA, breach of contract, and violated her procedural due process rights under the Fourteenth Amendment.  In support of her case, the plaintiff cited to her employer's tolerance of her impairment and the alternative work that she was allowed to perform.  The district court rejected her arguments and granted summary judgment in favor of the defendants on all her claims.

On appeal, the Tenth Circuit specifically noted that the plaintiff's attempt to use her employer's willingness to accommodate her in support of her ADA claim was improper.  The court stated:

> a plaintiff cannot use her employer's tolerance of her impairment-based, ostensibly temporary nonperformance of essential duties as evidence that those duties are nonessential.  To give weight to such a fact would perversely punish employers for going beyond the minimum standards of the ADA by providing additional accommodation to their employees.[19]

The Court finds the instant situation analogous to that in *Robert*.  Mr. Anderson points to the Postal Service's accommodation of allowing him to work less than six hours on the window as support that working six hours on the window was not an essential element of his job.  The Postal Service's willingness to accommodate Mr. Anderson, despite his inability to work on the window for six hours during a shift, does not make such a requirement nonessential.[20]  Further, the fact that later a position was created for Mr. Anderson following a successful FECA claim

---

[18] *Id.* at 1216.

[19] *Id.* at 1217; *see also Basith v. Cook Cnty.*, 241 F.3d 919, 930 (7th Cir. 2001) ("We do not believe it wise to consider the special assignment as proof that delivery was not an essential function because it would punish Cook County for going beyond the ADA's requirements.").

[20] *See Robert*, 691 F.3d at 1217.

cannot be used against the Postal Service because the Postal Service had no duty to create a

modified position prior to the FECA claim being granted.

In sum, Mr. Anderson's has failed to set forth specific facts that could persuade a

reasonable fact-finder that he was a qualified to work as a window clerk when he was restricted

to working on the window only three hours a day.[21]

Defendant also provided evidence that there is a requirement for a window clerk to have

an open till and must be available to work the till at any time during their eight hour shift.

Plaintiff has offered no evidence to refute this assertion.  Here, Plaintiff's restrictions would fail

to meet this requirement because if he were to work on the window for three hours during the

first part of his shift, he would then be precluded from working the till during any remaining time

on his shift.

ORDER

As set forth above, the Court concludes Plaintiff has failed to offer specific facts that

create a question of material fact concerning whether he could perform the essential functions of

the window clerk position.  Therefore, based upon the evidence before the Court, the Court

concludes summary judgment is appropriate for Defendant.  Defendant's Motion for Summary

Judgment is therefore GRANTED as to all of Plaintiff's claims.

DATED this 3 July 2013.

Brooke C. Wells
United States Magistrate Judge

---

[21] The Court also notes that Plaintiff has offered no evidence concerning similarly situated employees outside his protected class that were treated more favorably.  As such, he has failed to meet one of the prima facie elements for a disparate treatment claim.  See *Davidson*, 337 F.3d 1179, 1188-89.